**SEALED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60010-CR-DIMITROULEAS

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

MICHAEL SZAFRANSKI,

Defendant.
_____/

FILED by DB D.C.

JAN 2 2 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

## INDICTMENT

The Grand Jury charges that, at all times relevant to this Indictment:

### GENERAL ALLEGATIONS

1. Rothstein, Rosenfeldt and Adler, P.A. (hereinafter "RRA") was a law firm with offices located at 401 East Las Olas Boulevard, Fort Lauderdale, Florida in the Southern District of Florida and elsewhere. The law firm employed approximately seventy (70) attorneys and 150 staff members and engaged in the practice of law involving a wide range of specialties, including labor, employment, corporate, commercial and personal injury law.

2. Scott W. Rothstein (hereinafter referred to as "Rothstein") was an attorney and the Chief Executive Officer (CEO) and Chairman of RRA. Rothstein and RRA maintained approximately 38 bank accounts at TD Bank, which were utilized during the course of the fraudulent investment scheme further described below.

3. TD Bank, N.A., (hereinafter referred to as "TD Bank") was a large commercial bank with branch offices in 13 states, including offices in Weston, Florida and Ft. Lauderdale,

Florida. The executive offices of TD Bank were located in Portland, Maine and Cherry Hill, New Jersey.

4. During the course of the fraudulent investment scheme further described below, investors submitted funds to, and were paid by, TD Bank through wire transfers that were transmitted in interstate commerce to and from TD Bank.

5. Defendant MICHAEL SZAFRANSKI (hereinafter referred to as "SZAFRANSKI") was a registered investment advisor and was the Manager of ABS Capital Funding, LLC (hereinafter referred to as "ABS"), Alexa Funding, LLC (hereinafter referred to as "Alexa"), Sheket Investments, LLC, and Skis Ventures LLC, all of which were Florida Limited Liability Companies, and was also the Manager of Onyx Options Consultants Corp, a Florida For Profit Corporation.

6. Beginning in or about 2005, Rothstein and other co-conspirators began operating a fraudulent investment scheme, which is commonly referred to as a "Ponzi scheme," in which new investors' funds are utilized to pay previous investors in the absence of any underlying security, legitimate investment vehicle, or other commodity.

7. At different times, Rothstein utilized others, including defendant SZAFRANSKI, to assist him in carrying out various aspects of the fraudulent investment scheme. Those persons were not informed by Rothstein as to the entirety of the fraudulent investment scheme, but instead agreed to engage in acts intended to deceive and/or to engage in conduct to unlawfully obtain money and property by means of false and fraudulent pretenses and representations in order to unlawfully enrich themselves and Rothstein.

8. The potential investors in the fraudulent investment scheme were informed falsely that: either RRA or firms affiliated with RRA represented putative plaintiffs (hereinafter referred

to as "plaintiffs") in sexual harassment, discrimination, and/or whistle-blower suits; settlements of these claims had been negotiated prior to filing law suits; and the plaintiffs had accepted settlements to be paid out over a scheduled period to ensure the plaintiff did not disclose the nature of the settlement. The potential investors were informed falsely that: the plaintiffs would accept discounted lump-sum payments; the investors would fund the lump-sum payments to the plaintiffs; and, in exchange, potential investors would receive the installment payments due and owing to the plaintiffs under the terms of the negotiated settlement agreements. The potential investors were informed falsely that confidential settlements were available for purchase in amounts ranging from hundreds of thousands of dollars to millions of dollars.

9. Potential investors were informed falsely that the amounts due the plaintiffs were paid into trust accounts at TD Bank which were controlled by Rothstein and RRA, and that said funds would only be utilized to pay the potential investors.

10. In fact, there were no such plaintiffs who had entered into the above-described confidential settlement agreements. Instead, Rothstein and co-conspirators utilized the funds obtained from potential investors to further the fraudulent scheme by: paying prior investors in the scheme; supplementing and supporting the operation and activities of RRA; creating the appearance of affluence and wealth; and unlawfully enriching Rothstein and co-conspirators.

11. Banyon Capital LLC and related entities (hereinafter referred to as "the Banyon Group") solicited investors, including hedge funds located in New York City (hereinafter referred to as "the New York Hedge Funds"), to provide funding which was utilized to invest in Rothstein's confidential settlement agreements.

12. The New York Hedge Funds and other investors in Rothstein's confidential settlement agreements and their representatives, both before and after investing in the fraudulent

scheme, attempted to perform due diligence in order to verify that the purported plaintiffs and corporate defendants named in the confidential settlement agreements did, in fact, exist. Further due diligence was attempted in order to verify that other aspects pertaining to the confidential settlement agreements were genuine and legitimate.

13. Potential investors were informed that, pursuant to the aforesaid settlement agreements, the terms were to remain confidential and, therefore, the fully-executed settlement agreements could not be disclosed to the investors. In or about March 2008, due to their concerns about the legitimacy of the confidential settlements, the New York Hedge Funds insisted that an independent third-party verifier be hired to review what purportedly were the fully-executed settlement documents. In or about March 2008, Rothstein and the New York Hedge Funds agreed to hire defendant SZAFRANSKI to be the independent third-party verifier. As the independent third-party verifier, defendant SZAFRANSKI would be the sole person authorized to review what were purportedly the fully-executed settlement documents which contained the identities and signatures of the plaintiffs and representatives of the corporate defendants. Defendant SZAFRANSKI was paid $1,000 for each file of settlement documents that he reviewed on behalf of the Banyon Group and the New York Hedge Funds, with a maximum payment of $10,000 per month.

14. In furtherance of the fraudulent investment scheme, the confidential settlement agreements were created by Rothstein and co-conspirators in order to deceive potential investors. The names of the purported plaintiffs and corporate defendant entities were fictitious and were created by Rothstein and co-conspirators.

15. From in or about March 2008 through in or about April 2009, defendant SZAFRANSKI maintained the role of the independent third-party verifier for transactions

4

involving the New York Hedge Funds. The New York Hedge Funds employed defendant SZAFRANSKI as their fiduciary, to engage in verification activities in the best interest of those Funds.

16. As the New York Hedge Funds continued to invest additional funds in Rothstein's confidential settlement agreements, they requested that defendant SZAFRANSKI perform additional due diligence, including obtaining Dun & Bradstreet reports of the corporate defendants in order to determine that the corporate defendants had the ability to pay the settlement amounts.

17. In or about February 2009, without informing the New York Hedge Funds and the Banyon Group, defendant SZFRANSKI began soliciting persons to invest in Rothstein's confidential settlement agreements. At that time, in order to facilitate such solicitations, defendant SZAFRANSKI formed ABS and Alexa. Defendant SZAFRANSKI was paid by the investors whom he solicited a percentage of the profit received from the investment.

18. In or about April 2009, Rothstein failed to remit a scheduled payment that was due and owing to the New York Hedge Funds in accordance with the terms of the confidential settlement agreement.

19. In or about April 2009, the New York Hedge Funds ceased further investments in Rothstein's confidential settlements. At or about that time, Rothstein, through email transmissions, informed defendant SZAFRANSKI of the cessation of investments by the New York Hedge Funds and requested that defendant SZAFRANSKI solicit additional investors.

20. From in or about February 2009 through in or about October 2009, defendant SZAFRANSKI solicited investor groups to invest more than $200,000,000 in Rothstein's confidential settlement agreements, including two separate groups of investors from New York

(hereinafter referred to as "the New York Investors 1" and "the New York Investors 2"), a group of investors from Texas (hereinafter referred to as "the Texas Investors"), an investor from Miami, Florida (hereinafter referred to as "the Miami Investor"), and other investors with whom SZAFRANSKI was previously acquainted.

21. Defendant SZAFRANSKI entered into written agreements with the investors whom he solicited. Defendant SZAFRANSKI's fees would generally be a percentage of the profits realized by the investor, which was comprised of a finder's fee and a verification fee.

22. The written agreements between defendant SZAFRANSKI's entities, executed by defendant SZAFRANSKI, and the investors whom he solicited described the activities that would be performed in furtherance of the verification process. Those activities included confirmation that the relevant documents had been signed by both the representatives of the corporate defendants and the plaintiffs.

23. From on or about June 30, 2008 through on or about October 31, 2009, defendant SZAFRANSKI received fees in payment for verifying the confidential settlement agreements for the New York Hedge Funds and other entities which were investing through the Banyon Group.

24. From in or about February 2009 through in or about October 2009, defendant SZAFRANSKI received fees from investors who were solicited by defendant SZAFRANSKI and who had invested in the confidential settlements.

25. From on or about July 23, 2009 through on or about October 30, 2009, defendant SZFRANSKI received millions of dollars in compensation from Rothstein in connection with SZAFRANSKI's activities associated with the aforesaid sale of the confidential settlements.

## COUNT 1
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

1. The General Allegations are realleged and expressly incorporated herein as if set forth in full.

2. From in or about 2008 through in or about November 2009, in Broward County in the Southern District of Florida and elsewhere, the defendant,

MICHAEL SZAFRANSKI,

did knowingly and willfully combine, conspire, confederate, and agree with Rothstein to devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, to knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain signs, writings, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

### The Scheme to Defraud

3. The scheme to defraud consisted of inducing and attempting to induce the Banyon Group, the New York Hedge Funds, the New York Investors 1, the New York Investors 2, the Texas Investors, the Miami Investor, and other persons and entities, into investing money in confidential settlements through material misstatements and material omissions by defendant SZAFRANSKI. Those material misstatements and omissions were designed to deceive investors and potential investors as to the legitimacy and authenticity of the parties ostensibly involved in the confidential settlements.

7

4. As part of the scheme to defraud, defendant SZAFRANSKI would falsely state to investors that he was employed as an independent party to verify the authenticity and legitimacy of the underlying confidential settlement transactions. In fact, defendant SZAFRANSKI, directly or through his companies, received millions of dollars in compensation from Rothstein and RRA, which information was intentionally withheld from investors, including the New York Hedge Funds, the New York Investors 1, the New York Investors 2, the Texas Investors, the Miami Investor, and other investors.

5. Defendant SZAFRANSKI, while acting in the capacity of a purported independent third-party verifier solely on behalf of the New York Hedge Funds, concealed from the New York Hedge Funds his efforts to solicit other individuals and entities to invest in the confidential settlements.

6. Defendant SZAFRANSKI, while soliciting other individuals and entities to invest in the confidential settlements, failed to disclose to those individuals and entities that, in April 2009, Rothstein had failed to remit a scheduled payment that was due and owing to the New York Hedge Funds.

7. Defendant SZAFRANSKI also failed to disclose to the Texas Investors, the Miami Investor, and other investors that he was altering the purported rates of return they were to receive upon the purchase of confidential settlements, thereby enabling defendant SZAFRANSKI to obtain funds from those transactions over and above SZAFRANSKI's agreed upon commission fee.

<u>Manner and Means</u>

8. From in or about April 2008, defendant SZAFRANSKI, through oral communications, repeatedly and falsely assured the New York Hedge Funds that defendant

SZAFRANSKI had reviewed the fully-executed confidential settlement documents and had confirmed that they had been signed by the plaintiffs and representatives of the corporate defendants.

9. Beginning in or about 2009, through email transmissions, defendant SZAFRANSKI repeatedly and falsely assured the New York Hedge Funds that defendant SZAFRANSKI had reviewed the fully-executed confidential settlement documents and had confirmed that they had been signed by the plaintiffs and representatives of the corporate defendants.

10. On or about April 16, 2009, in order to allay the New York Hedge Funds' suspicions stemming from Rothstein's failure to make a scheduled payment to the New York Hedge Funds, defendant SZAFRANSKI sent an email transmission to a representative of the New York Hedge Funds. Defendant SZAFRANSKI described in the email those specific activities in which he had been engaged in order to verify the authenticity and legitimacy of the confidential settlements. Defendant SZAFRANSKI confirmed that, among other procedures, he reviewed un-redacted copies of the settlement agreements signed by the plaintiffs and representatives of the corporate defendants. Defendant SZAFRANSKI further confirmed that, once per month, he visited the TD Bank branch in Weston, Florida and verified the RRA trust account balances with a bank teller.

11. On or about April 23, 2009, a representative of the New York Hedge Funds spoke with defendant SZAFRANSKI regarding his concern about the missed payment. Defendant SZAFRANSKI reassured the representative of the New York Hedge Funds as to the legitimacy of Rothstein's purported confidential settlements in an effort to convince the New York Hedge Funds to continue to invest in Rothstein's purported confidential settlements. Defendant

SZAFRANSKI detailed the steps that he took to reassure that the investment was secure, including: 1) viewing un-redacted settlement documents signed by the plaintiffs and the representatives of the defendant corporations; 2) conducting aggressive internet searches, through which he established links between the plaintiffs and the corporate defendants that were parties to the confidential settlement agreements; 3) obtaining Dun & Bradstreet reports regarding the alleged defendant corporations; 4) determining that many of the defendant corporations were counted among the Dow 30, S&P 500 and Fortune 500 companies; 5) verifying through the TD Bank Treasury Direct system the balances of the RRA trust accounts held at TD Bank; 6) personally verifying with a teller or manager at the TD Bank branch the balances of the RRA trust accounts held at TD Bank; and 7) personally meeting with plaintiffs.

12.     On or about April 23, 2009, defendant SZAFRANSKI affirmed the aforesaid conversation with a representative of the New York Hedge Funds through an email transmission. Defendant SZAFRANSKI detailed the steps he had taken to go "above and beyond" the instructions given to him by the New York Hedge Funds to verify funds. Defendant SZAFRANSKI explained the following: 1) many of the corporate defendants are well-known companies and are counted among the Dow 30, S&P 500, and Fortune 500; 2) some of the companies are private that "we have all come to know;" 3) via aggressive web searches, defendant SZAFRANSKI had found links between the plaintiff and corporate defendant; 4) defendant SZAFRANSKI was present in a room when Rothstein negotiated a settlement with defense counsel and defendant SZAFRANSKI was aware of the corporate defendant; and 5) defendant SZAFRANSKI was confident in the legitimacy of the verification strategy and had done "practically everything possible" to verify the information and protect the investors.

13. From in or about February 2009 through in or about October 2009, defendant SZAFRANSKI solicited individuals to invest in Rothstein's confidential settlement agreements. Many of the individuals whom he solicited were members of his synagogue and had a high degree of trust in defendant SZAFRANSKI based upon his standing in the community. Defendant SZAFRANSKI represented to these investors that he was very knowledgeable about finance and investing. Many of these investors were aware that defendant SZAFRANSKI had been the independent third-party verifier for the New York Hedge Funds.

14. Defendant SZAFRANSKI informed several of the investors whom he had solicited that he had verified the existence and legitimacy of the plaintiffs and corporate defendants by performing the following: 1) reviewing driver's licenses of the plaintiffs; 2) obtaining Dun & Bradstreet reports; 3) verifying that the confidential settlement agreements had been executed by representatives of the corporate defendants; and 4) conducting internet searches in order to establish a connection between the plaintiffs and the corporate defendants.

15. In or about late-October 2009, after defendant SZAFRANSKI became aware that Rothstein had missed payments to investors, defendant SZAFRANSKI engaged in activities designed to conceal that fact from those investors whom SZAFRANSKI had solicited. In the course thereof, defendant SZAFRANSKI requested a loan from Rothstein and sent an email transmission to Rothstein which stated, "Also I am debating whether to make any disclosures to my little ppl bc they will freak out if pmts are late, so I'm scrambling for a loan." Thereafter, defendant SZAFRANSKI sent an additional email to Rothstein requesting the loan which stated, "This is because I do not want to reveal this issue to investors as they will freak out and blow this up."

All in violation of Title 18, United States Code, Section 1349.

11

## COUNTS 2 - 12
(Wire Fraud, 18 U.S.C. § 1343)

1. The General Allegations, and those allegations set forth in paragraphs 3 through 15 of Count 1 of this Indictment, are realleged and incorporated herein by reference.

2. From in or about 2008 through in or about November 2009, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

MICHAEL SZAFRANSKI,

and Rothstein did knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises as described in Count 1 of this indictment, and, for the purpose of executing such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain signs, writings, signals, pictures, and sounds, as is more particularly described below.

### The Wire Communications

3. For the purpose of executing the aforesaid scheme, defendant SZAFRANSKI transmitted and caused to be transmitted certain wire communications in interstate commerce, on or about the date enumerated, as is more particularly described below:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 2 | October 7, 2009 | Wire transfer in the amount of $35,000 from Citibank N A account number xxxxxxxxxx870 to Bank of America account number xxxxxxxxx097 |
| 3 | October 16, 2009 | Wire transfer in the amount of $16,000,000 from JPMorgan Chase account number xxxxxxx226, to TD Bank, NA account number xxxxxxx923 |
| 4 | October 20, 2009 | Wire transfer in the amount of $180,000 from Bank of America account number xxxxxxxxxxxxx431 to Bank of America account number xxxxxxxxx097 |

12

| 5 | October 20, 2009 | Email transmission from mike@onyxcapitalmanagement.com to mel@dsequities.com and ezelmanovitz@yahoo.com, Subject: Fw: S166 |
| 6 | October 20, 2009 | Wire transfer in the amount of $5,000,000 from Apple Bank NYC account number xxxxxxx812 to TD Bank account number xxxxxxx906 |
| 7 | October 20, 2009 | Email transmission from mike@onyxcapitalmanagement.com to ezelmanovitz@yahoo.com, mel@dsequities.com and seisenberg@uticaadvisors.com, Subject: Fw: From ScanFront220 |
| 8 | October 21, 2009 | Wire transfer in the amount of $10,000,000 from Apple Bank NYC account number xxxxxxx812 to TD Bank account number xxxxxxx906 |
| 9 | October 27, 2009 | Email transmission from mike@onyxcapitalmanagement.com to srothstein@rra-law.com, Subject: Re: Ira |
| 10 | October 29, 2009 | Email transmission from mike@onyxcapitalmanagement.com to srothstein@rra-law.com, Subject: Re: Letter |
| 11 | October 29, 2009 | Email transmission from srothstein@rra-law.com to mike@onyxcapitalmanagement.com, Subject: Re: amount of exposure per acct |
| 12 | October 30, 2009 | Email transmission from mike@onyxcapitalmanagement.com to srothstein@rra-law.com, Subject: ira msg |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendant has an interest pursuant to Rule 32.2(a), Federal Rules of Criminal Procedure. Forfeiture is being sought pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), as made applicable hereto by Title 28, United States Code, Section 2461.

2. Upon conviction of any of the offenses set forth in Counts 1 - 12 of the Indictment, the defendant,

MICHAEL SZAFRANSKI,

13

shall forfeit to the United States, all property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property subject to forfeiture includes, but is not limited to, a sum of money equal in value to any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the violations alleged in this Indictment, which the United States will seek as a forfeiture money judgment against defendant.

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

_____
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

_____
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| MICHAEL SZAFRANSKI | **CERTIFICATE OF TRIAL ATTORNEY*** |
| **Defendant.** _____/ | **Superseding Case Information:** |

**Court Division:** (Select One)

| | | | | New Defendant(s) ____ Yes ____ No |
|---|---|---|---|---|
| | Miami ____ | Key West ____ | | Number of New Defendants ____ |
| XX | FTL ____ | WPB ____ | FTP ____ | Total number of counts ____ |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    NO
   List language and/or dialect   _____

4. This case will take    **20**    days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                                    (Check only one)

   | | | | | | |
   |---|---|---|---|---|---|
   | I   | 0 to 5 days    | ____ | Petty   | ____ |
   | II  | 6 to 10 days   | ____ | Minor   | ____ |
   | III | 11 to 20 days  | _X_  | Misdem. | ____ |
   | IV  | 21 to 60 days  | ____ | Felony  | _X_ |
   | V   | 61 days and over | ____ | | |

6. Has this case been previously filed in this District Court?    No    (Yes or No)
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    ____ No    (Yes or No)
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case?    NO    (Yes or No)

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    ____ Yes    _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    ____ Yes    _X_ No

_____
Lawrence D. LaVecchio
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0305405

Penalty Sheet(s) attached                                            REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:  **Michael Szafranski**

Case No: _____

Count #:  1

  **Conspiracy to Commit Wire Fraud**

  **18 U.S.C. § 1349**

* Max. Penalty:   20 Years' Imprisonment; 3 Years' Supervised Release
                  $250,000.00 Fine or twice the gross gain or twice the gross loss.

Counts #:  2 thru 12

  **Wire Fraud**

  **18 U.S.C. § 1343**

*Max. Penalty:    20 Years' Imprisonment; Years' Supervised Release
                  $250,000.00 Fine or twice the gross gain or twice the gross loss.

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.